734 S.E.2d 641

**Vernon SULTON and Willie Mae Scott, Respondents,**

**v.**

**HEALTHSOUTH CORPORATION d/b/a HealthSouth of South Carolina, Inc., d/b/a HealthSouth Rehabilitation Hospital, Kathy Hoover, RN, Lisa Page, RN, Sharon Miller, RN, Kim Harris, RN, Betty Casteal, RN, and Norine Corbin, RN, Appellants.**

**No. 27192.**

Supreme Court of South Carolina.

Heard Oct. 17, 2012.

Decided Nov. 21, 2012.

414

C. Mitchell Brown, William C. Wood, Jr., and Brian P. Crotty, of Nelson Mullins Riley & Scarborough, and Carmello B. Sammataro, of Turner Padget Graham & Laney, all of Columbia, for Appellants.

John S. Nichols, of Bluestein Nichols Thompson & Delgado, of Columbia, Fernando Xavier Starkes, of Starkes Law Firm, of Columbia, Chad Alan McGowan of McGowan Hood & Felder, of Rock Hill, and William Jones Andrews, Jr., of McGowan Hood & Felder, of Columbia, for Respondent.

Justice PLEICONES.

In this direct appeal, Appellants HealthSouth Corporation (HealthSouth) and the individual named nurse defendants challenge the jury's verdict in a negligence and loss of consortium action. We reverse and remand for a new trial.

## FACTS

Vernon Sulton (Sulton) was rendered paraplegic by gunshot wounds he received as a bystander at an armed robbery. After initial treatment at Richland Memorial Hospital, he was transferred to the HealthSouth Rehab Hospital in Columbia, South Carolina. He was admitted with a sacral stage two pressure ulcer. In the eleven days Sulton remained at HealthSouth, the pressure ulcer progressed from stage two to stage four. Sulton underwent a colostomy and surgery that included a skin graft, and the pressure ulcer eventually fully healed. Sulton and his wife, Willie Mae Scott (Scott), sued HealthSouth and several of its nurses, alleging that Sulton had been injured by the defendants' negligent provision of nursing care. Scott alleged a cause of action for loss of consortium. Sulton died of unrelated causes prior to trial. In the survival action, a jury found against all defendants and awarded

$306,693.25 in economic damages but no non-economic damages. In the loss of consortium action, the jury found Health-South alone liable to Scott for four million dollars in non-economic damages. The jury also found that HealthSouth had been willful, wanton, or reckless. In the punitive damages phase of the bifurcated proceedings, the jury awarded eight million dollars in punitive damages. HealthSouth moved for JNOV, new trial absolute, and new trial *nisi remittitur*. These motions were denied. This appeal followed.

## ISSUES

I. Did the trial court err when it instructed the jury that heightened risk creates a greater duty of care in a medical malpractice case?

II. Was the verdict form flawed such that Appellants were prejudiced?

III. Did the trial court err when it permitted Respondents to refer to HealthSouth's net operating revenue?

## DISCUSSION

I. Heightened duty of care in jury charge

Appellants argue they are entitled to a new trial because the trial court improperly instructed the jury that they owed a heightened duty of care to Sulton and Scott. We agree.

A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law. *Keaton ex rel. Foster v. Greenville Hosp. System*, 334 S.C. 488, 495–96, 514 S.E.2d 570, 574 (1999). An erroneous jury instruction constitutes grounds for reversal only if the appellant can show prejudice from the erroneous instruction. *Ellison v. Simmons*, 238 S.C. 364, 372, 120 S.E.2d 209, 213 (1961).

In a medical malpractice action, the duty of care under South Carolina law is "that of an average, competent practitioner acting in the same or similar circumstances." *King v. Williams*, 276 S.C. 478, 482, 279 S.E.2d 618, 620 (1981) (citation omitted).

In this case, the trial court instructed the jury over Appellants' objection that

> [I]t is the general law applicable to all persons that if there is a great degree of danger present then there is a greater duty of care to percent [prevent] injuries to other persons. A similar rule applies to physicians or healthcare providers in their treatment of their patients. When there's a risk of substantial danger present and the symptoms of the patient are consistent with such a risk then the healthcare provider has a duty to respond in proportion to the risk. The greater the risk of the condition to the patient the greater the duty of the healthcare provider to respond appropriately and to provide appropriate treatment.

Appellants contend that this charge wrongly heightened their duty and that they were prejudiced thereby. We agree.

In *Pittman v. Stevens,* 364 S.C. 337, 613 S.E.2d 378 (2005), this Court addressed a nearly identical jury instruction.[1] In *Pittman,* the trial court failed to use this charge when requested to do so. *Id.* at 340, 613 S.E.2d at 379. After finding that the trial court did not err since the jury charge as a whole correctly stated South Carolina law, the Court explained that "there is no South Carolina case law supporting [the heightened duty instruction's] application in a medical malpractice action." *Id.* at 342, 613 S.E.2d at 380–81. Such a charge is likely to confuse or mislead a jury into believing that the duty is something greater than "ordinary care under the circumstances." *Id.* at 343, 613 S.E.2d at 381. The Court concluded by stating that **"this instruction is even more inappropriate in a medical malpractice case"** because "[e]very medical decision encompasses varying degrees of danger." *Id.* (emphasis added).

Respondents argue that *Pittman* is distinguishable from the present case because the *Pittman* Court merely refused to reverse the trial court after it declined to give this requested instruction, while the present case considers the question whether it was error to give the instruction. Although this distinction is accurate, *Pittman* does not merely hold that the instruction was superfluous but also criticizes it as improper,

---

1. This charge is apparently taken from Judge Ralph King Anderson Jr.'s book, *South Carolina Request to Charge.*

especially in a medical malpractice case. We hold that it was error for the trial court to give the instruction.

Respondents argue that Appellants were not prejudiced despite the improper instruction because the trial court also advised the jury of the proper standard at several points. Conversely, Appellants urge us to hold, as did a North Carolina court, that as a rule "an erroneous instruction upon a material aspect of the case is not cured by the fact that in other portions of the charge the law is correctly stated." *Crow v. Ballard,* 263 N.C. 475, 478, 139 S.E.2d 624, 627 (N.C.1965). The North Carolina standard does not comport with South Carolina jurisprudence regarding jury instructions, which analyzes jury instructions as a whole and emphasizes prejudice analysis. *See, e.g., Ardis v. Sessions,* 383 S.C. 528, 682 S.E.2d 249, 251 (2009). Nevertheless, we agree that, in this case, the erroneous instruction went to the heart of the case and was "not cured by the fact that in other portions of the charge the law [was] correctly stated" because Appellants introduced evidence to demonstrate that they did exercise reasonable care in relation to the pressure ulcer. Moreover, if the jurors believed that the law imposed a heightened duty on Appellants as a result of Sulton's vulnerability, their perception of the egregiousness of Appellants' breach of that duty would likely have been correspondingly exaggerated. Thus, the fact that the jurors also found HealthSouth reckless, willful, and wanton and awarded substantial punitive damages demonstrates the pervasive potential impact of the improper charge.

Accordingly, we find that Appellants are entitled to a new trial.

Although not necessary to our decision, we address two additional issues raised by HealthSouth that may arise upon retrial.

## II. Verdict form

 HealthSouth argues that flaws in the verdict form entitle it to a new trial. We agree.

"[A] special verdict question may be so defective in its formulation that its submission results in a prejudicial effect which constitutes reversible error.... The prejudicial effect

of a defective verdict form may be cured where the trial court provides clear and cogent jury instructions." *South Carolina Dept. of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 303, 641 S.E.2d 903, 908–09 (2007) (citations omitted).

In the liability stage of the proceedings in this case, both the Appellants and Respondents submitted proposed verdict forms. Over Appellants' objection, the trial court provided the jury with the verdict form that had been submitted by Respondents. The first question on the verdict form was designed to permit a finding of liability on the survival action, the second question on the consortium action. Each question began with a textual portion that read, "We the jury find for the Plaintiff . . . and against the Defendant HealthSouth Corporation . . . and the following:" This introductory text was followed by a list of the names of the individual nurses, from which the jury could select any or all or, alternatively, select "NONE OF THE ABOVE." An additional portion of each question allowed the jury to determine the related damages. The third question asked the jury whether it found that "HealthSouth Corporation . . . by and through its employees was reckless, willful, or wanton and that their conduct was proximate cause of injury to Plaintiff[.]"

HealthSouth argues that the verdict form failed to give the jury a way to find against some or all of the individual nurse defendants while simultaneously finding in favor of HealthSouth Corporation. We agree and find the form's overall structure both confusing and prejudicial, since it strongly suggests that HealthSouth was necessarily more culpable than the individual defendants despite the fact that Respondents' theory at trial was based on HealthSouth's vicarious rather than direct liability.

III. Punitive damages award

After the jury returned a verdict finding HealthSouth reckless, willful, and wanton, the court proceeded to a punitive damages phase of trial in which the jury returned an $8 million verdict against HealthSouth. HealthSouth argues that the trial court erred when it permitted Respondents to refer to HealthSouth's net operating revenue. We agree.

■ In assessing punitive damages, "the wealth of a defendant is a relevant factor" in determining the defendant's ability to pay, but only evidence of net worth and extrapolations from net worth may be introduced on the issue. *Branham v. Ford Motor Co.*, 390 S.C. 203, 239–40, 701 S.E.2d 5, 24–25 (2010). In addition, such evidence must be handled cautiously, since "the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." *Id.* at 239, 701 S.E.2d at 24 (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994)).

■ In this case, the trial court properly declined to admit HealthSouth's 10–K financial form, the only evidence offered by Respondents at the punitive damages phase. However, the trial court proceeded to permit Respondents' counsel, over HealthSouth's objection, to inform the jury that HealthSouth's 2009 net operating revenue as shown on the 10–K was $1.911 billion.[2]

This was improper for two reasons. First, HealthSouth's financial information was presented to the jury through counsel's arguments without supporting evidence. *See South Carolina Dept. of Transp. v. Thompson*, 357 S.C. 101, 105, 590 S.E.2d 511, 513 (Ct.App.2003) ("Arguments made by counsel are not evidence."); *O'Leary–Payne v. R.R. Hilton Head, II, Inc.*, 371 S.C. 340, 352, 638 S.E.2d 96, 102 (Ct.App.2006) ("Closing arguments must be confined to evidence in the record and reasonable inferences therefrom.").[3]

■ Second, informing the jury of a corporation's net operating revenue is improper under *Branham*, and the prejudicial effect of doing so is self-evident. Net revenue has no necessary relation to net worth and it could be, as HealthSouth contends, that shareholder equity was actually negative

2. The record reflects that this phase was irregular, consisting solely of arguments. Only the 10–K form was offered in evidence, and no evidence of any kind was actually admitted.

3. We do not suggest that the 10–K form should have been submitted into evidence. Neither do we preclude reliance on such financial data by an expert witness under Rule 703, SCRE.

(i.e., the corporation had no net worth). Putting this huge sum of money into the minds of the jury, reflecting the company's net income but accounting for none of its expenses and obligations, was almost certainly misleading and very likely to have stirred any jury bias against big businesses. *Branham, supra.*

## CONCLUSION

Because the trial court improperly instructed the jury that Appellants owed Respondents a heightened duty of care, we

**REVERSE AND REMAND** for a new trial on all issues as to all Appellants.

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.