HILL, J.:
A jury awarded Gary Nestler* $7,117.50 actual damages for personal injuries sustained as a result of a car wreck caused by Joseph Fields. Fields admitted he was at fault in causing the wreck and Nestler's injuries, so the trial concerned only the amount of Nestler's damages. Nestler did not introduce the $7,117.50 amount of his medical bills into evidence, but the trial court overruled his relevance objection when Fields offered them. The trial court also overruled his objection to charging the jury the law regarding mitigation of damages. The trial court denied Nestler's motion for new trial. Nestler appeals, arguing the trial court erred in admitting the amount of his medical bills, charging the jury on mitigation, and denying his new trial motion. We affirm the well-reasoned rulings of the skilled trial judge.
I.
A. Admission of the Amount of Nestler's Medical Bills
Nestler claimed injuries including cervical strain, left elbow contusion, tennis elbow, and a permanent impairment rating of 53% for his left upper extremity, which translated to a 32% impairment rating for the whole person. Nestler testified to his consistent pain, the limited range of motion of his left arm, and loss of his ability to engage in and enjoy life like he had before the wreck. His wife related how his injuries hampered his previously active lifestyle.
Nestler's trial strategy focused on his pain and suffering. In objecting to admission of the amount of his medical bills, he argued the amount was irrelevant to the jury's determination of how much he should be compensated for his loss, and any probative value it had was substantially outweighed by the danger of unfair prejudice. See Rules 401, 402, and 403, SCRE. Nestler reasoned his medical expenses bore no relation to the magnitude of his damages, and allowing the jury to learn of the amount of his expenses would mislead them into believing his pain and suffering could not be extensive. See Corenbaum v. Lampkin , 215 Cal.App.4th 1308, 156 Cal.Rptr.3d 347, 365 (2013) ("[T]he full amount billed is not admissible for the purpose of ... proving noneconomic damages."); Martin v. Soblotney , 502 Pa. 418, 466 A.2d 1022, 1025 (1983) ("[T]here is no logical or experiential correlation between the monetary value of medical services ... and the quantum of pain and suffering endured as a result of that injury.").
We may only reverse a trial court's evidentiary rulings if they constitute an abuse of discretion, meaning they rest on an error of law or inadequate factual support. Morin v. Innegrity, LLC , 424 S.C. 559, 575, 819 S.E.2d 131, 140 (Ct. App. 2018). We can find no authority in our state discussing the issue of whether a party seeking actual damages for personal injury may prevent the *464 introduction of his actual medical bills by the other party. We see no error in the admission of the amount of Nestler's medical bills. Under the specific facts here we cannot say the risk of unfair prejudice substantially outweighed the probative value of the billed amount. Rule 403, SCRE ; United States v. McRae , 593 F.2d 700, 707 (5th Cir. 1979) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."). We are confident in the jurors' ability to weigh evidence and must presume they followed their instructions by applying the facts to the law of damages. We see no reason they should be kept ignorant of the cost of Nestler's medical treatment in determining the facts. What they did with that evidence was largely up to them; as the trial court noted, part of the advocate's art is persuading jurors how such evidence should be interpreted. Different cases may warrant different procedural measures, including bifurcation, special verdict forms or limiting instructions.
B. Jury Instruction on Mitigation of Damages
Nestler claims the jury should not have been charged that he had a duty to mitigate his damages because there was no evidence any mitigation would have been successful. To warrant reversal, it must not only have been an error for the judge to have instructed the jury on mitigation, but the error must have prejudiced Nestler. See Sulton v. HealthSouth Corp. , 400 S.C. 412, 416, 734 S.E.2d 641, 643 (2012) ("An erroneous jury instruction constitutes grounds for reversal only if the appellant can show prejudice from the erroneous instruction.").
The jury heard evidence that Nestler's treating doctor prescribed extensive physical therapy, a nerve conduction study, and other recommended treatments. It also learned Nestler attended only a fraction of the physical therapy and did not pursue the other options because he believed they would have been futile. Nestler maintains this evidence is not enough to support a mitigation charge because without an expert opinion that his failure to complete the prescribed treatments would have lessened or reduced his pain and suffering and other damages, a mitigation charge licensed the jury to speculate.
We disagree. Most of the mitigation evidence came from Nestler's own doctor. The doctor's testimony about the physical therapy and other treatment he recommended to Nestler was an expert opinion that carried with it the inference Nestler claims was absent, i.e. that the doctor would not have recommended the treatment unless he believed to a reasonable degree of medical certainty it would have helped. Nestler testified his doctor told him he could stop the physical therapy if it was not working. But as the trial court pointed out, the reasonableness of Nestler's choices was up to the jury. See McClary v. Massey Ferguson, Inc. , 291 S.C. 506, 510-11, 354 S.E.2d 405, 407-08 (Ct. App. 1987) ("The reasonableness of actions to mitigate damages is ordinarily a question for the jury.").
C. Denial of New Trial
Nestler maintains he is entitled to a new trial because, despite the extensive evidence as to his permanent impairment, pain and suffering, and other non-economic damages, the jury only awarded him the amount of his medical bills. The record reveals Nestler moved for a new trial absolute and a new trial based on the thirteenth juror doctrine, which the trial court denied. The trial court also declined to order a new trial nisi .
"When a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial judge must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." See Riley v. Ford Motor Co. , 414 S.C. 185, 192, 777 S.E.2d 824, 828 (2015). "When the verdict indicates that the jury was unduly liberal or conservative in its view of the damages, the trial judge alone has the power to [alter] the verdict by the granting of a new trial nisi ." Id . (emphasis and alteration in original). "However, when the verdict *465 is so grossly excessive or inadequate that the amount awarded is so shockingly disproportionate to the injuries as to indicate the jury was moved or actuated by passion, caprice, prejudice, or other considerations not found in the evidence, it becomes the duty of the trial judge and this Court to set aside the verdict absolutely." Id .
As we have noted, Nestler's trial strategy was to not seek specific recovery of his actual medical expenses but to focus on the extent of his pain and suffering and the permanency of his injuries. The trial court was persuaded the verdict was not inadequate or otherwise unjust. We agree. The jury had before it evidence that, if believed, undercut Nestler's credibility. As Fields' counsel brought out on cross, Nestler boasted a semi-photographic memory, but could not recall a prior lawsuit he had brought alleging permanent injuries to his neck and back arising from a different car wreck. Nestler did not disclose the lawsuit in discovery, and the trial court instructed the jury they could infer the information withheld would have been unfavorable to Nestler. Fields also assailed the veracity of Nestler's permanency rating, bringing to light that the doctor's initial 8% impairment rating for the entire person shot up to 32% after Nestler (his good friend) asked him to revisit it in an effort to resolve this case. The jurors' reaction to this inconsistency may have been like hearing the thirteenth stroke of a clock "which not only is itself discredited but casts a shade of doubt over all previous assertions." A.P. Herbert, Uncommon Law 28 (new ed. 1969).
Juries do not have to accept even uncontradicted testimony, much less testimony that contradicts itself. See Black v. Hodge , 306 S.C. 196, 198, 410 S.E.2d 595, 596 (Ct. App. 1991) ("The fact that testimony is not contradicted directly does not render it undisputed. There remains the question of the inherent probability of the testimony and the credibility of the witness or the interests of the witness in the result of the litigation."). The jury could have found serious credibility gaps in Nestler's damages evidence.
Drawing reasonable inferences from the evidence in the light most favorable to Fields, we find the trial court did not abuse its discretion in denying his motion for a new trial absolute. For the same reasons, we affirm the trial court's denial of Nestler's motion for a new trial under the thirteenth juror doctrine. Trivelas v. S.C. Dep't of Transp. , 357 S.C. 545, 551, 593 S.E.2d 504, 507 (Ct. App. 2004) ("[T]hirteenth juror doctrine allows the circuit court judge to grant a new trial absolute when the judge finds the evidence does not justify the verdict."); see also Howard v. Roberson , 376 S.C. 143, 156-57, 654 S.E.2d 877, 884 (Ct. App. 2007) ("The thirteenth juror doctrine is not the proper vehicle for ordering a new trial on a singular issue such as damages.").
Finally, the trial court did not abuse its discretion in deciding not to order a new trial nisi additur . Although some cases have held a trial court abuses its discretion when it refuses to grant a new trial nisi additur when the jury's verdict is less than a party's medical bills, see, e.g. , Patterson v. Reid , 318 S.C. 183, 186-87, 456 S.E.2d 436, 438 (Ct. App. 1995) (finding the trial court's grant of a new trial nisi additur was not an abuse of discretion when jury awarded $500.54 in actual damages but plaintiff incurred $6,339.40 in medical expenses), or fails to account for pain and suffering, see Waring v. Johnson , 341 S.C. 248, 260, 533 S.E.2d 906, 912 (Ct. App. 2000), the trial court here found no compelling reason to impose its will on the parties and invade the jury's domain. We must accord the trial court's decision "great deference," and respect its superior position to gauge credibility and the field of evidence. Rush v. Blanchard , 310 S.C. 375, 381, 426 S.E.2d 802, 806 (1993) ("[G]reat deference is given to the trial judge, especially in the area of intangible elements of damages.").
AFFIRMED.
KONDUROS and MCDONALD, JJ., concur.

Julie Nestler withdrew her claim for loss of consortium at trial.