**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Amy S. Davis as Personal Representative of The Estate of Utricia Shealy, deceased, Respondent,

v.

Agape Nursing Rehabilitation Center, Inc., Agape Management Services, Inc., John Doe, Richard Roe Corporation, Jane Doe, and Mary Doe Corporation, Defendants,

Of Which Agape Nursing Rehabilitation Center, Inc. and Agape Management Services, Inc. are the Appellants.

Appellate Case No. 2018-002236

———————

Appeal From Lexington County
Walton J. McLeod, IV, Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-094
Heard December 8, 2021 – Filed March 9, 2022

———————

**AFFIRMED**

———————

Jenkins McMillan Mann and Shaun C. Blake, both of Rogers Lewis Jackson Mann & Quinn, LLC, of Columbia, for Appellants.

Kenneth Luke Connor and Christopher Caleb Connor, both of Connor & Connor LLC, and Allen Keith McAlister, Jr., of Hawk Law Group, all of Aiken, for Respondents.

---

**PER CURIAM:**  In this nursing home negligence action, the estate of Utricia Shealy (the Estate) sued Agape Nursing Rehabilitation Center, Inc. and Agape Management Services, Inc. (together, Agape) for damages resulting from injuries Ms. Shealy sustained to her hip when she fell from her wheelchair twenty-seven hours after her admission to Agape Nursing Rehabilitation Center.  The Estate's professional negligence claim alleged Agape's nurses breached their duty of care to Ms. Shealy. The Estate's ordinary negligence claim alleged Agape failed to provide appropriate care for residents.  The Estate further alleged Agape Management Services and Agape Nursing Rehabilitation Center were alter egos of one another due to an amalgamation of interests and acted as agents of one another—making each responsible for the negligence of the other.  In its answer, Agape alleged inter alia the affirmative defense of intervening cause.

The jury found, "Defendants were engaged in a joint enterprise/joint venture, were agents of one another, or were amalgamated[.]"  The jury awarded the Estate $47,500 actual damages and $250,000 non-economic damages.  On appeal, Agape asserts the trial court erred in: 1) granting a directed verdict against Agape on its affirmative defense of intervening cause; 2) admitting evidence of past complaints against Agape investigated by Department of Health and Environmental Control (DHEC); 3) admitting evidence of the wealth of Agape's owner and family; 4) denying Agape's directed verdict motion on the Estate's claim of professional negligence as to Agape Management Services; and 5) denying Agape's motion for leave to deposit and stay the accrual of interest and execution of the judgment during the appeal.  We affirm.

1.  Agape asserts the trial court erred in granting a directed verdict on its affirmative defense of intervening cause as to the Estate's professional negligence claim.[1]  The

---

[1]  To the extent Agape appeals the grant of the directed verdict on the affirmative defense of intervening cause as to the Estate's ordinary negligence claim, we find no error.  *See Graham v. Whitaker*, 282 S.C. 393, 399, 321 S.E.2d 40, 44 (1984) (finding injury resulting from the negligent act of the physician is not a shield to liability as an intervening cause because it is "reasonably foreseeable" and "part of the

Estate presented evidence Agape's nursing staff deviated from the standard of care by not taking action that would have prevented Ms. Shealy's fall. However, Agape argues given the evidence at trial, the jury could have believed Ms. Shealey's treating physician's decision to prescribe Ativan and not any other fall intervention intervened to cause of Ms. Shealy's injuries. This argument is misplaced for several reasons. First, Agape does not contend the physician's treatment decision was negligent. In fact, Agape asserts it does not matter if it was—it only matters whether the physician's decision restrained the nurse's actions so as to be the actual cause of her injuries. In South Carolina, though, only intervening negligence has been held to be an affirmative defense. *See Small v. Pioneer Mach., Inc.*, 316 S.C. 479, 489, 450 S.E.2d 609, 615 (Ct. App. 1994) (stating the negligent intervening act of a third party is an affirmative defense to a negligence claim). Agape presented no expert testimony that the physician breached the standard of care, and no evidence indicated the treating physician's decisions (which were made ten hours before Ms. Shealy's fall) broke the causal chain of her injuries. *See Horne v. Atl. Coast Line R. Co.*, 177 S.C. 461, 181 S.E. 642, 646 (1935) (distinguishing between concurring and intervening causes of injury and finding a concurring cause of injury is not a shield to liability, while an intervening cause may be so long as it is independent of and occurs subsequent in time to the initial negligent breach or "primary" cause of injury, thereby breaking the chain of causal connection between the primary breach and the injury); *Botehlo v. Bycura*, 282 S.C. 578, 583, 320 S.E.2d 59, 62–63 (Ct. App. 1984) (finding in a negligence claim against a physician, there will usually be no genuine issue of material fact unless the claimant presents expert testimony on the standard of care and its breach by the physician). Agape's argument that the nurses were bound by the physician's decisions is really an argument that the nurses were acting within their standard of care when Ms. Shealy fell. This, of course, was the ultimate question presented to the jury, and because there was conflicting evidence about whether the nurses breached their standard of care, the question was properly left to the jury. Accordingly, we find no error in the trial court's decision to grant a directed verdict on Agape's affirmative defense of intervening cause.

2. Agape asserts the trial court violated Rules 402 and 403, SCRE, in allowing testimony regarding an October 2013 DHEC survey of Agape's past infractions. We find the trial court did not abuse its discretion in allowing the testimony. First, the questions the Estate asked regarding the DHEC survey were either about patients who fell at Agape facilities or circumstances that could make falls more likely, such as unreasonable delay in helping patients use the restroom. These infractions were

---

immediate and direct damages which naturally flow from the original injury").

probative of whether Agape breached its duty of care to Ms. Shealy because the infractions placed it on notice that without attention to fall mitigation efforts, falls and injuries could result. *See Pike v. S.C. Dep't of Transp.*, 343 S.C. 224, 234, 540 S.E.2d 87, 92–93 (2000) (evidence of previous accidents at an intersection were relevant to show the Department of Transportation knew the intersection was dangerous and potentially required a traffic light). Further, it is clear the trial court exercised discretion when admitting testimony regarding the DHEC survey by limiting the scope of the infractions to the issue of patient falls. *See Nestler v. Fields*, 426 S.C. 34, 38, 824 S.E.2d 461, 463 (Ct. App. 2019) ("We may only reverse a trial court's evidentiary rulings if they constitute an abuse of discretion, meaning they rest on an error of law or inadequate factual support."); Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Therefore, we find no abuse of discretion in the admission of evidence regarding the DHEC survey results under Rule 402 or 403, SCRE.

3. Agape asserts the infractions from the DHEC survey "occurred under a different administrator of the facilities, a different director of nursing, and different staff," therefore, there was not a proper foundation for the admission of the DHEC survey results. A public record is admissible if it is shown to be "from the public office where items of this nature are kept." Rule 901(b)(7), SCRE. Here, the trial court found the DHEC survey was a public record. Agape challenges the witness' familiarity with the record. Because Agape does not contest the DHEC survey's status as a public record, we affirm the admission of testimony regarding the DHEC survey as properly authenticated.

4. Agape asserts the trial court violated Rules 402 and 403, SCRE, in admitting evidence of the wealth of Agape's owner, Scott Middleton; his family's involvement with Agape; and a Center for Medicaid Services (CMS) cost report. First, Agape asserts the trial court erred in allowing the Estate to elicit testimony from Scott Middleton that three nursing home facilities, including the Rehabilitation Center, sold for $20 million and that Middleton's wife and daughter received compensation from Agape businesses. Next, Agape asserts the CMS cost report, the sale price of the nursing homes, and the employment of the Middleton family were not relevant and unduly prejudicial. We find the evidence of the sale of nursing homes and the CMS cost report was probative of issues at trial. *See* Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The sale of Agape Nursing Rehabilitation

Center was probative of whether Agape prioritized financial decisions over patient care. *See Morrow v. Fundamental Long-Term Care Holdings, LLC*, 412 S.C. 534, 538, 773 S.E.2d 144, 146 (2015) ("[D]irect corporate liability attaches due to a breach of a duty which runs directly between a parent company and a patient, arising from negligence in actions such as leaving a hospital underfunded, understaffed, or undertrained so as to provide substandard care."). The CMS cost report demonstrated Agape Management Services and Agape Nursing Rehabilitation Center were in an "interrelationship," probative of an amalgamation of interests and joint venture theory of liability. *See Pertuis v. Front Roe Rests., Inc.*, 423 S.C. 640, 653, 817 S.E.2d 273, 279 (2018) (finding "certain enterprises choose to conduct their business in such a way that the law should no longer regard the various corporations as distinct entities" and may be found liable of for the fault of the other if it can be demonstrated "various entities' operations are intertwined" and there is "evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions"). Accordingly, the trial court did not err in finding these pieces of evidence were relevant.

As for whether the prejudicial effect of these pieces of evidence substantially outweighed their probative value, there was no abuse of discretion. *See Nestler*, 426 S.C. at 38, 824 S.E.2d at 463 (defining abuse of discretion). First, the CMS cost report was heavily redacted so that any confusion or prejudice was mitigated, while its probative value was maintained. It is a closer question whether the actual dollar figure for the sales price of the nursing facilities was more prejudicial than probative; however, in the context of the entire record, we do not believe this fact alone allowed the jury to decide the case on an improper basis. *See Lyles*, 379 S.C. at 338, 665 S.E.2d at 206 ("When juxtaposing the prejudicial effect against the probative value, the determination must be based on the entire record and will turn on the facts of each case."); *State v. Bright*, 323 S.C. 221, 226, 473 S.E.2d 851, 854 (Ct. App. 1996) ("Unfair prejudice from the introduction of evidence occurs when it has an undue tendency to induce a decision on an improper basis."). While $20 million is a large amount of money, some context was given to its amount as a sales price. For example, Middleton explained the sale price was for three facilities or three hundred beds. Further, evidence in the record supports the jury's damages award, including evidence Ms. Shealy's fall caused her to endure a second hip surgery and three years in a nursing home. Accordingly, we affirm the admission of the redacted CMS cost report and sales price of the nursing homes.

As to the evidence of Middleton's wife's chaplaincy and his daughter's employment at Agape facilities, the probative value was limited. However, any error in its admission was harmless. *See State v. Langley*, 334 S.C. 643, 647–48, 515 S.E.2d

98, 100 (1999) ("Even if the evidence was not relevant and thus wrongly admitted by the trial judge, its admission may constitute harmless error if the irrelevant evidence did not affect the outcome of the trial."). We find the Estate presented sufficient proof of both professional and ordinary negligence against Agape that it is unlikely this evidence affected the verdict.

5. Agape next claims the trial court erred in denying its directed verdict motion on the Estate's professional negligence claim against Agape Management Services. Specifically, Agape contends because Agape Management Services did not employ the nurses who provided care to Ms. Shealy, there can be no vicarious liability or agency liability for Agape Management Services based on the nurses' negligence. Agape further asserts the Estate failed to present sufficient evidence there was an amalgamation of interests or joint venture between Agape Management Services and Agape Nursing Rehabilitation Center for the Rehabilitation Center's vicarious liability for its nurses' professional negligence to attach to Agape Management Services. Finally, Agape cites *Pertuis v. Front Roe Rests.*, which found a party attempting to establish amalgamation of interests must show more than a blurring of lines between two companies but must instead show evidence of "bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions." 423 S.C. at 655, 817 S.E.2d at 280–81. Agape asserts the Estate presented no evidence of wrongdoing; therefore, the directed verdict motion should have been granted.

We find the issue of whether the Estate presented sufficient evidence of the amalgamation of interests, joint venture, or alter-ego between Agape Management Services and the Rehabilitation Center is not preserved. The first time these grounds were raised was in Agape's JNOV motion after trial. When moving for a directed verdict on the Estate's professional negligence claim against Agape Management Services, Agape asserted only one ground: Agape Management Services could not be held liable for the professional negligence of the nurses because they were not agents of Agape Management Services. Accordingly, we may not consider the other grounds for reversal on appeal. *See State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 67, 777 S.E.2d 176, 194 (2015) (finding ground not asserted in the directed verdict motion but raised for the first time in a JNOV motion is not preserved for appellate review). Further, because Agape has preserved only one ground for the denial of the directed verdict for appeal (agency)—but not the grounds of alter-ego, joint-venture, or amalgamation of interests—these grounds for liability, and the general verdict that resulted from their presentation to the jury, are

the law of the case and unassailable on appeal due to the two-issue rule.[2] *See Ulmer v. Ulmer*, 369 S.C. 486, 490, 632 S.E.2d 858, 861 (2006) (finding, as a general rule, an unchallenged ruling, right or wrong, is the law of the case); *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 287 S.C. 190, 193, 336 S.E.2d 472, 473–74 (1985) (finding when the general verdict of a jury is supportable under more than one cause of action submitted to it, under the two-issue rule, the appellate court will affirm unless appellant appeals all causes of action). Accordingly, we affirm as to the issue of whether the record contained sufficient evidence to support the verdict of professional negligence liability against Agape Management Services.

6. Agape asserts the trial court erred in denying its motion for leave to deposit the judgment amount with the clerk of court to stay the accrual of interest during the pendency of Agape's post-trial motions and appeal under Rules 62(b) and 67, SCRCP. Agape contends because it was prepared to deposit the entire amount of its judgment with the court, it was entitled to the deposit and the accompanying stay of the accrual of interest on appeal as a matter of right. In the alternative, Agape argues the trial court's decision to deny leave to stay the accrual of interest was arbitrary and an abuse of discretion. We find there is no automatic right to the stay of the accrual of interest on appeal under Rule 62(d), SCRCP, and the trial court did not abuse its discretion in denying Agape's motion to stay the accrual of post-judgment interest under either Rules 62(b) or 67, SCRCP.

Under Rule 62(b), SCRCP, a trial court may, "[i]n its discretion and on such conditions for the security of the adverse party as are proper," stay the execution of any proceedings to enforce a judgment pending the disposition of post-trial motions. Rule 62(b), SCRCP. The policy expressed in Rule 62(b) "favors the [judgment] creditor over the [judgment] debtor." *Stearns Bank Nat'l Ass'n v. Glenwood Falls, LP*, 375 S.C. 423, 426, 653 S.E.2d 274, 276 (2007). Next, under Rule 62(d), SCRCP, and S.C. Code Ann. § 18-9-130 (A)(1) (2014), if a judgment debtor is able to post a bond, then execution of the judgment will be stayed on appeal as a matter of right. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) (Mem. Op. of Harlan, J.) (examining Fed Rule of Civil Procedure 62(d)

---

[2] We also note that both amalgamation of interests and alter-ego liability lie in equity, and accordingly, it is the judge who must make a decision on the merits regarding these claims, not the jury. *Stoneledge at Lake Keowee Owners' Ass'n v. IMK Dev. Co.*, 435 S.C. 109, 120, 866 S.E.2d 542, 548 (2021). However, the parties have not raised a question about this error on appeal; therefore, it is not before us. *Summersell v. S.C. Dep't of Pub. Safety*, 337 S.C. 19, 22, 522 S.E.2d 144, 146 (1999) (stating it is error for the appellate court to consider an issue not raised to it).

to find stay of money judgment is matter of right if supersedeas bond is posted); 12 James Wm. Moore et al., *Moore's Federal Practice* § 62.03[1] (3d ed. 2008) (same); 11 Charles A. Wright, et al., *Federal Practice and Procedure* § 2905 at 520 (2d ed. 1995) (same). However, a stay of execution is not the same thing as a stay of the accrual of post-judgment interest. Leave to stay post-judgment interest when a case is on appeal is not controlled by Rule 62(d), SCRCP. It is controlled by Rule 67, SCRCP. *Russo v. Sutton*, 317 S.C. 441, 444, 454 S.E.2d 895, 897 (1995). Whether leave to stay the accrual of interest is given under Rule 67, SCRCP, is in the discretion of the trial court "and will not be overturned absent an abuse of that discretion." *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 369 S.C. 150, 153, 631 S.E.2d 533, 535 (2006). "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion without evidentiary support." *Id*.

Here, the trial court found: 1) there was no allegation Agape would be unable to satisfy the $297,000 judgment with interest at a later date; 2) Agape was unlikely to succeed on the merits of its case; and 3) finally, Agape contested both the amount of the award it owed and whether it had any liability for Ms. Shealy's injuries at all. Weighing these factors, the trial court found staying the interest would prejudice the Estate, and therefore, it would not penalize the Estate by granting Agape's motion.

We see no error of law in the trial court's denial of Agape's motion to stay the post-judgment accrual of interest. Rule 67, SCRCP, benefits the judgment creditor by "encourag[ing] the debtor to pay the judgment and assur[ing] the judgment creditor the funds will be available at the conclusion of the appeal." *Russo*, 317 S.C. at 444, 454 S.E.2d at 896. However, when the trial court concludes there is a likelihood the debtor will be able to pay the judgment after the debtor's appeal has not succeeded on the merits, this benefit turns into prejudice for the judgment creditor by pausing the judgment creditor's statutory right to post-judgment accrual of interest during the pendency of the debtor's appeal. *See* S.C. Code Ann. § 34-31-20 (2020); *Hunting v. Elders*, 359 S.C. 217, 229, 597 S.E.2d 803, 809 (Ct. App. 2004) ("[A] claimant is entitled to interest from the date of the rendition of the verdict, or post-judgment interest, as a matter of course."). Our reading of the purpose of Rule 67, SCRCP, is in line with federal law, which for many years did not allow a judgment debtor to utilize Rule 67, Fed. R. Civ. P., and pause the accrual of interest when the debtor denied liability for the judgment and the creditor contested the deposit. *See, e.g.*, *Blasini-Stern v. Beech-Nut Life Savers Corp.*, 429 F. Supp. 533, 535 (D.P.R. 1975); *Dinkins v. Gen. Aniline & Film Corp.*, 214 F. Supp. 281, 283 (S.D.N.Y. 1963). Rather, courts held the Rule was only to be employed when the debtor conceded liability, but there was a dispute about which party in the lawsuit should be paid. *See, e.g.*, *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484

F.3d 106, 113 (1st Cir. 2007) ("The core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto."); *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986) (discussing Rule 67 and stating, "this procedural device was only intended to provide a place of safekeeping for disputed funds pending resolution of a legal dispute and not to provide a means of altering the contractual relationships and legal duties of each party"); 11 Charles A. Wright, et al., § 2991 Payment into Court, 12 *Fed. Prac. & Proc. Civ.* § 2991 (3d ed. 2021).

It was not until Rule 67, Fed. R. Civ. P. was amended in 1983 to require the court to place the judgment deposit into an interest-bearing account that the Rule was also amended to allow debtors who contested liability for the judgment to utilize the Rule. *See* 97 F.R.D. 165, 226, Advisory Committee Note on 1983 Amendment to Rule 67, Fed. R. Civ. P. South Carolina's Rule 67, SCRCP, while almost identical in language to its federal counterpart, omits the portion of the rule requiring the deposit be made in an interest-bearing account. Accordingly, this safeguard on the judgment creditor's right to the accrual of interest during appeal is not in place in South Carolina, and instead, the right must be safeguarded by the discretion of the trial court. While nothing in our Rule 67 requires the court to place the funds in an interest-bearing account, the court has the discretion to do so. Because we find the trial court exercised discretion in denying the Agape's request to stay the accrual of interest on appeal—and the record supports this exercise of discretion—we affirm the denial of Agape's motion for leave to deposit and stay the accrual of interest under Rules 62(b) and 67, SCRCP.

Accordingly, the jury's verdict and the trial court's denial of Agape's post-trial motions are

**AFFIRMED.**

**KONDUROS, HILL, and HEWITT, JJ., concur.**