534 S.E.2d 306

**Ruth D. GAZES, Appellant,**

v.

**DILLARD'S DEPARTMENT STORE, INC., and Schindler Elevator Corporation, Respondents.**

**No. 3199.**

Court of Appeals of South Carolina.

Heard May 9, 2000.
Decided June 19, 2000.

508

Dennis E. O'Neill, of Mt. Pleasant;  and J. Lawrence Duffy, Jr., of Charleston, for appellant.

Richard A. Farrier and Deirdre Shelton McCool, both of Nelson, Mullins, Riley & Scarborough;  Elizabeth H. Warner and L. Gregory C. Horton, both of Buist, Moore, Smythe & McGee, all of Charleston, for respondents.

HEARN, Chief Judge:

In this tort action, Ruth D. Gazes appeals from a directed verdict in favor of the respondents, Dillard's Department Store and Schindler Elevator Corporation.  We reverse and remand for a new trial.

## FACTS/PROCEDURAL HISTORY

In March 1995, Gazes visited a Dillard's Department Store in Charleston County to return a pair of slacks. Gazes entered the store and went to an escalator to ride to the second floor. When she stepped onto the escalator, Gazes had the slacks in a plastic grocery bag looped around her left wrist, a pocketbook on her left shoulder, and a cane in her right hand. Gazes placed her left hand or wrist onto the escalator's handrail. As Gazes rode the escalator to approximately the fourth or fifth step, she was jerked to the left and pulled off her feet.

Immediately after her fall, Gazes told Mark Vermillion, a Dillard's employee and eyewitness, that her bag got caught, causing her to fall. The next day, Vermillion gave a statement that "[Gazes] was having trouble with her left hand, that there was something, either a bag or something, catching."

Gazes subsequently filed this suit against Dillard's. Dillard's denied liability and filed a third party complaint against Schindler Elevator Corporation, which allegedly designed, manufactured, installed, inspected, and maintained the escalator.

Prior to trial, but over three years after the incident, Vermillion testified in his deposition that Gazes's plastic bag was catching on the inside of the escalator's handrail. However, Vermillion also testified he did not see Gazes start to fall and that when he first observed her, she was already spinning to the left.

At trial, Gazes attempted to introduce the expert testimony of Del L. Krause, an accident reconstructionist, to offer his opinion that Gazes's plastic bag was traveling outside, rather than inside, the escalator's handrail which caused her to fall when the bag became trapped between the handrail and a closely situated column. Krause based his opinion on an interview with Gazes, an inspection of the accident scene, and black marks on the plastic bag consistent with rubber on the escalator's handrail. Krause would have opined that the proximity of the columns and the escalator's handrail, without some means of preventing a bag from becoming entangled, created a dangerous hazard and Dillard's should have recognized this situation as a risk to its customers' safety.

The trial court refused to admit Krause's testimony under Rules 702 and 703 of the South Carolina Rules of Evidence, concluding that Krause's opinion lacked the proper factual basis because there had been no evidence presented that the plastic bag was on the outside of the escalator's handrail. The court reasoned that if the bag were on the outside of the escalator's handrail, Gazes would have noticed, and since she did not recall the bag being on the outside of the handrail, it must have been on the inside.

Gazes also offered the testimony of Leonard Greene, a forensic engineer, to establish the cause of her fall. Greene examined the escalator and reviewed Gazes's deposition testimony that she fell when she reached the fourth for fifth step on the escalator. He noted that the escalator and column were only five inches apart at the location of Gazes's initial fall, creating a "pinch point." Greene testified that pinch points are expected with escalators and are usually guarded against through the installation of devices designed to prevent objects from being caught in them. However, no such protections were installed at this pinch point.

Although the court permitted Greene's testimony concerning the pinch point and the use of guards to protect against such hazards, it refused to admit his opinion, that to a reasonable degree of engineering certainty, the most probable cause of Gazes's fall was the bag becoming trapped between the escalator's handrail and the column. The court excluded the evidence under Rule 403 of the South Carolina Rules of Evidence. The court also excluded Greene's answer to a hypothetical question regarding the accident's cause. The court reasoned Greene's answer, that the fall was precipitated by the bag becoming caught between the escalator's handrail and the column, was not supported by the evidence and therefore the answer amounted to improper speculation.

After Gazes rested her case, the trial court directed a verdict in favor of Dillard's and Schindler. This appeal follows.

## LAW/ANALYSIS

### I. Expert Testimony

Gazes contends the trial court erred in excluding Krause's and Greene's testimony regarding the cause of Gazes's acci-

dent. Specifically, Gazes contends a sufficient factual basis existed to support the experts' opinions. We agree.

■ The decision to admit or exclude expert testimony rests within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *Payton v. Kearse,* 329 S.C. 51, 60–61, 495 S.E.2d 205, 211 (1998); *Hundley v. Rite Aid,* 339 S.C. 285, 529 S.E.2d 45 (2000). Rules 702 and 703 of the South Carolina Rules of Evidence provide guidelines for the admissibility of expert testimony. Rule 702 provides that a qualified expert may testify when "scientific, technical, or specialized knowledge will assist the trier of fact ... to determine a fact in issue." Rule 702, SCRE. Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rule 703, SCRE. Furthermore, even if an expert's testimony is admissible under Rule 703, SCRE, the trial judge may exclude the testimony based on Rule 403, SCRE. *State v. Slocumb,* 336 S.C. 619, 627–28, 521 S.E.2d 507, 511–12 (Ct. App.1999); *see also* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

## A. Krause's Testimony

■ In excluding Krause's testimony, the court did not question the reliability of accident reconstruction science or Krause's expertise in the field. Instead, the court based its ruling on an alleged lack of factual support for Krause's opinion that the plastic bag traveled on the outside of the escalator's handrail. We find the trial court abused its discretion in excluding Krause's testimony.

Under Rule 703, SCRE, an expert may base his or her opinion on inadmissible evidence if the evidence is "of a type

reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Rule 703, SCRE. Krause based his opinion on an interview with Gazes, an investigation of the accident scene, and an inspection of the black marks on the plastic bag Gazes was carrying. Interviewing the victim of an accident, investigating the accident scene, and inspecting physical evidence from the accident is exactly the type of evidence commonly relied upon by accident reconstructionists.

Moreover, the evidence presented at trial also provided a sufficient factual basis for Krause's opinion. Gazes testified to her location at the time she fell and the proximity of the escalator and the column. There was also testimony that Gazes's plastic bag had black marks on it after the incident. Furthermore, one witness testified that he stuck a piece of paper into the handrail and when he removed the paper, it was marked with what appeared to be the same black substance as found on the bag.

Therefore, we find there was evidence to provide a sufficient factual basis for Krause's opinion. In fact, it is exactly this type of situation, where direct evidence of an accident's cause is scant and in dispute, that testimony from an accident reconstructionist can assist the trier of fact in "determin[ing] a fact in issue." Rule 702, SCRE. The existence of evidence that the plastic bag was on the inside of the escalator's handrail and the limited amount of evidence for Krause to form an opinion may affect the weight to be accorded Krause's testimony but not its admissibility.[1] *See Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 470, 494 S.E.2d 835, 846 (Ct.App. 1997) ("Where the expert's testimony is based upon facts sufficient to form the basis for an opinion, the trier of fact determines its probative value.").

---

1. It should be noted that Gazes offered Krause's testimony a second time after Greene testified and Vermillion's deposition was admitted as a court exhibit, thus providing additional facts to support Krause's opinion. Specifically, Greene testified that the design and operation of the handrail created the potential for a bag being carried underneath one's wrist to move onto the top of the handrail and then fall down either side. Nevertheless, the trial court again excluded Krause's testimony.

## B. Greene's Testimony

■ Although the court permitted Greene's testimony concerning the "pinch point" created by the escalator's handrail and the column, the court refused to admit his opinion as to the most probable cause of Gazes's fall. The trial court excluded the evidence under Rule 403, SCRE.[2]

At trial, Dillard's and Schindler argued against the admission of Greene's opinion on the ground that Greene's testimony concerning the most probable cause for Gazes's fall exceeded a forensic engineer's expertise. However, the court found a forensic engineer "could probably" testify to the cause of an accident. Furthermore, the trial court earlier found Greene qualified to testify as a forensic engineer.

Initially, we agree with the trial court that under the circumstances present in this case, Greene would be qualified to testify to causation because a forensic engineer's expertise would assist the trier of fact in determining causation, a fact in issue. *See* Rule 702, SCRE. Furthermore, under the same analysis employed regarding Krause's testimony, we find Greene's review of Vermillion's testimony and Krause's deposition, together with Greene's inspection of the accident scene and the plastic bag, provide a sufficient factual basis for Greene to express an opinion on the cause of Gazes's fall.

■ Finally, we find the trial court erred in excluding Greene's answer to the hypothetical question concerning the cause of Gazes's fall. An expert's opinion testimony may be based upon a hypothetical question. *Gathers v. South Carolina Elec. and Gas Co.*, 311 S.C. 81, 82, 427 S.E.2d 687, 688 (Ct.App.1993). Even though the hypothetical question must be based on facts supported by the evidence, counsel may pose the hypothetical "on any theory which can reasonably be

---

**2.** The trial judge explicitly stated he was excluding this portion of Greene's testimony based on Rule 403, SCRE, rather than on the ground he excluded Krause's testimony—an opinion without evidentiary support. However, the trial court never stated how Greene's testimony violated Rule 403, SCRE. Instead, the court stated, "there's nothing in the record to support" Greene's opinion. Therefore, although not explicit, it appears the trial court found Greene's testimony would "mislead[ ] the jury" to such an extent that the probative value of Greene's testimony would be substantially outweighed by the prejudicial effect.

deduced from the evidence and select as a predicate for it such facts as the evidence proves or reasonably tends to prove." *Id.* at 82–83, 427 S.E.2d at 688.

Gazes's counsel posed the following hypothetical question to Greene:

I want you to assume that Mrs. Gazes entered that escalator that you took a picture of, that her fall took place four to six [steps] up the escalator, that her bag or that bag, that Piggly Wiggly bag, was caught on something, that she came to rest four to six [steps] up on the escalator, that Mr. Vermillion, the man who turned the escalator off and who did come to her assistance, states in his deposition and in his statement that he gave a day or two after the accident, that something was caught, referring to Mrs. Gazes' stopping on the escalator. Assuming those facts and that there's no reflection that she had no complete balance up to the stopping when she stopped, would you have an opinion as to what precipitated that stop and that fall of Mrs. Gazes?

In response, Greene would have opined that Gazes fell because her bag caught between the escalator's handrail and the column. The trial court found this dialogue would be inconsistent with the evidence presented at trial. We disagree.

At trial, there was testimony that Gazes fell at approximately the fourth or fifth step on the escalator, the escalator's handrail was located close to a column, and after her fall the plastic bag had black marks on it. Greene testified that the escalator handrail and the column were only approximately five inches apart at the pinch point. Greene also testified that the handrail could cause a bag hanging on a person's wrist to rise to the top of the handrail and then fall to either side. We find this evidence sufficient to support the hypothetical question and Greene's response. Therefore, we find the trial court abused its discretion in excluding the hypothetical question and Greene's response.

## II. Directed Verdict

Gazes argues the trial court erred in granting the respondents' motion for directed verdict. In light of our

rulings on the expert testimony, we hold a directed verdict was inappropriate.

When ruling on a directed verdict motion, the trial court must consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 476, 514 S.E.2d 126, 130 (1999). Where only one inference can be drawn from the evidence, the motion must be granted. *Davenport v. Cotton Hope Plantation Horizontal Property Regime,* 333 S.C. 71, 88, 508 S.E.2d 565, 574 (1998). However, where more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. *Quesinberry v. Rouppasong,* 331 S.C. 589, 594, 503 S.E.2d 717, 720 (1998).

Based on our holding that both Krause's and Greene's testimony should have been admitted, and viewing the evidence in the light most favorable to Gazes, there is more than one reasonable inference from the evidence as to the cause of Gazes's fall. Therefore, the trial court erred in granting Dillard's and Schindler a directed verdict.

## CONCLUSION

For the reasons discussed above, the trial court's order granting the respondents a directed verdict is reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

ANDERSON and HUFF, JJ., concur.