**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Karrie Gurwood and Howard Gurwood, Appellants,

v.

GCA Services Group, Inc. and GCA Services Group of North Carolina, Inc., Respondents.

Appellate Case No. 2019-001403

———————

Appeal From Charleston County
Alex Kinlaw, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-321
Submitted August 1, 2025 – Filed September 24, 2025

———————

**REVERSED AND REMANDED**

———————

Karrie Gurwood and Howard Gurwood, of Charleston, pro se.

Robert T. Lyles, Jr., of Lyles & Associates, LLC, of Mt. Pleasant, for Respondents.

———————

**PER CURIAM:** In this slip-and-fall case, a jury found that Respondents GCA Services Group, Inc. and GCA Services Group of North Carolina, Inc. (collectively, GCA) and Appellant Karrie Gurwood (Karrie) were each 50% at fault and awarded Karrie half of her current medical expenses but nothing for pain and suffering or

future medical costs. Additionally, the jury denied Appellant Howard Gurwood's (Howard) claim for loss of consortium. The Gurwoods appealed, arguing the trial court erred by (1) denying their new trial motions; (2) granting GCA's motion for a directed verdict as to punitive damages; (3) allowing GCA's expert witness to testify; (4) excluding testimony by their expert witness; (5) allowing GCA to introduce evidence of Karrie's medical insurance for impeachment purposes; and (6) denying their motion for a directed verdict on the issue of assumption of the risk and sending this question to the jury. Initially, this court found the trial court erroneously granted GCA's motion for a directed verdict as to punitive damages and reversed and remanded for a new trial.[1] Our supreme court affirmed the reversal but remanded the case to this court to address the remaining five issues on appeal.[2] We now reverse and remand for a new trial based on the erroneous admission of unreliable expert testimony.

## I.     Dr. Hartman's Expert Testimony

The trial court allowed Dr. Leah Hartman—GCA's expert in human factors psychology—to testify as to her opinion that based on certain behaviors she observed in video footage of the fall, Karrie had some awareness that the floor was slippery. We hold the substance of Dr. Hartman's testimony was unreliable and the trial court abused its discretion in admitting the testimony.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. "All expert testimony must meet the requirements of Rule 702, regardless of whether it is scientific, technical, or otherwise."[3] *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 74, 735 S.E.2d 650, 655 (2012). "The qualification of a witness as an expert is within the discretion of the [trial] court, and we will not reverse absent an abuse of that discretion." *Id.* "An abuse of discretion occurs when the conclusions of the trial court either lack

---

[1] *Gurwood v. GCA Servs. Grp., Inc.*, Op. No. 2022-UP-462, 2022 WL 17828222 (S.C. Ct. App. filed Dec. 21, 2022), *aff'd as modified*, 445 S.C. 324, 914 S.E.2d 149 (2025).

[2] *Gurwood v. GCA Servs. Grp., Inc.*, 445 S.C. 324, 914 S.E.2d 149 (2025).

[3] The parties disagree as to whether Dr. Hartman's testimony constituted scientific expert testimony or nonscientific expert testimony. The trial court did not specify whether it considered Dr. Hartman's testimony to be scientific or nonscientific— regardless, we hold the testimony was unreliable either way.

evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

For all expert testimony, the trial court must execute its "gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration." *State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009). "Trial courts are tasked only with determining whether the basis for the expert's opinion is *sufficiently reliable* such that it may be offered into evidence[,]" and if so offered, "whether to accept the expert's opinions or not is a matter for the jury to decide." *State v. Jones*, 423 S.C. 631, 639–40, 817 S.E.2d 268, 272 (2018) (emphasis added) ("There is always a possibility that an expert witness's opinions are incorrect.").

> The substance of an expert's testimony is reliable if it adheres to the rigors of the method. As long as the trial court is satisfied the expert's testimony consists of a reliable method faithfully and reliably applied, the gate of admissibility should be opened.

*State v. Warner*, 430 S.C. 76, 86–87, 842 S.E.2d 361, 366 (Ct. App. 2020), *aff'd in part and remanded*, 436 S.C. 395, 872 S.E.2d 638 (2022) (citation omitted). A trial court does not abuse its discretion by excluding expert testimony if the "conclusions [are] not supported by the data and experiments upon which [the expert] relied." *Id.* at 86, 842 S.E.2d at 366 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))).[4]

"The test for reliability for expert testimony does not lend itself to a one-size-fits-all approach." *Watson v. Ford Motor Co.*, 389 S.C. 434, 450 n.3, 699 S.E.2d 169, 177 n.3 (2010). When assessing the reliability of scientific expert testimony, the trial court must consider four factors, as outlined in *State v. Council*:

> (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence

---

[4] This analysis draws on federal caselaw and discussions of the *Daubert* standard. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–95 (1993). While "South Carolina has not adopted [the *Daubert* framework] by name" nor "revised Rule 702, SCRE, to incorporate the *Daubert* framework[,]" we have followed an "extraordinarily similar" approach. *Warner*, 430 S.C. at 86, 842 S.E.2d at 365–66.

involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures.

335 S.C. 1, 19, 515 S.E.2d 508, 517 (1999). "However, these factors 'serve no useful analytical purpose' for nonscientific evidence." *Graves*, 401 S.C. at 74, 735 S.E.2d at 655–56 (quoting *White*, 382 S.C. at 274, 676 S.E.2d at 688). "Due to the wide range of nonscientific fields and topics, our supreme court has declined to set forth general reliability guidelines, instead opting to consider each case on its facts." *Warner*, 430 S.C. at 85–86, 842 S.E.2d at 365.

Applying the *Council* factors, we hold the trial court abused its discretion in admitting the testimony because Dr. Hartman failed to provide evidence of any prior application of her method to the type of evidence in this case. *Council*, 335 S.C. at 19, 515 S.E.2d at 517 ("In considering the admissibility of scientific evidence . . . the [c]ourt looks at several factors, including . . . prior application of the method to the type of evidence involved in the case . . . ."); *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265 ("An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."). Dr. Hartman watched a 37-second video of Karrie's fall and concluded that "behaviors demonstrated in the video indicate[d] [Karrie] had some form of awareness that she was walking into a slippery environment." In particular, Dr. Hartman observed that Karrie's initial steps in the video—her pre-fall steps—resembled her final steps in the video—her post-fall steps—and opined that Karrie likely had some awareness of the slippery floor *before* she slipped; otherwise, Dr. Hartman would have expected to see a difference between Karrie's initial steps and those that occurred after she fell and discovered the floor was slippery. While this methodology—comparing pre-fall steps with post-fall steps—resembles the technique used in "calibration-type" experiments cited by Dr. Hartman, Dr. Hartman provided no evidence of when a conclusion of this sort has been reached from video footage alone. Dr. Hartman did not "adhere to the rigors of the method" or "faithfully and reliably" apply the method by basing her conclusion on a 37-second video and a comparison between three pre-fall steps and four post-fall steps. *Warner*, 430 S.C. at 86–87, 842 S.E.2d at 366 ("The substance of an expert's testimony is reliable if it adheres to the rigors of the method. As long as the trial court is satisfied the expert's testimony consists of a reliable method faithfully and reliably applied, the gate of admissibility should be opened." (citation omitted)). In other words, there is "too great an analytical gap" between the data—in this case, the very short video—and Dr. Hartman's conclusion. *Id.* at 86, 842 S.E.2d at 366 ("A court may conclude that there is simply too great an

analytical gap between the data and the opinion proffered." (quoting *Gen. Elec. Co*, 522 U.S. at 146)).

Even if the testimony was nonscientific, Dr. Hartman's testimony still lacks sufficient indicia of reliability. *Warner*, 430 S.C. at 85–86, 842 S.E.2d at 365 ("Due to the wide range of nonscientific fields and topics, our supreme court has declined to set forth general reliability guidelines, instead opting to consider each case on its facts."). Dr. Hartman's conclusion in this case relies on the converse of the premise established by her research, but the truth of the converse requires independent verification. While we do not doubt the research cited by Dr. Hartman indicating that if someone is aware of a slippery surface, they will exhibit certain behaviors, this research does not necessarily validate the *converse* inference that if someone exhibits certain behaviors, they are aware of a slippery surface.[5] Without independent verification, Dr. Hartman's conclusion is unreliable; reliability requires empirical verification that the specific inference relied on by the expert has been successful. *Id.* at 88, 842 S.E.2d at 367 ("The reliability of experience-based [i.e., nonscientific] expertise is often proven by its success."); *see* 1 *McCormick on Evidence* § 13 (8th ed.) (2020) ("[T]he [court] should insist on a foundation demonstrating that the expert's technique [] 'works' . . . . The foundation must include a showing of the results when the technique was used on prior occasions.").

Thus, because Dr. Hartman provided neither evidence of a prior application of her method to the type of evidence in this case nor evidence to validate the success of her inference, her testimony was not sufficiently reliable, and the trial court erred by admitting her expert testimony.

Moreover, we hold this error was prejudicial as the evidence likely influenced the jury. "Reversal of a trial [court]'s qualification of an expert witness requires the complaining party to prove both an abuse of discretion and prejudice." *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 37, 691 S.E.2d 135, 142 (2010). "Prejudice is a reasonable probability that the jury's verdict was influenced by the challenged evidence." *Watson*, 389 S.C. at 448, 699 S.E.2d at 176. Here, there is a reasonable probability that the jury's verdict was influenced by Dr. Hartman's testimony. The jury found Karrie to be 50% at fault and thus her damages award

---

[5] The truth of a statement does not imply the truth of its converse. Testimony presented by Karrie's expert in human factors psychology, Dr. Hejzlar, alludes to this problem, because he presented an alternative explanation for Karrie's behaviors in the video: perhaps Karrie's initial steps indicate she was coming around a corner and not that she had an awareness of a slippery environment.

was reduced by 50%. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 245, 399 S.E.2d 783, 784 (1991) ("[A] plaintiff in a negligence action may recover damages if his or her negligence is not greater than that of the defendant. The amount of the plaintiff's recovery shall be reduced in proportion to the amount of his or her negligence."). Her knowledge about the dangerous condition was a contested fact relevant to the jury's assessment of her comparative fault. Given that Dr. Hartman provided the only evidence as to Karrie's actual knowledge of the slippery floor, there is a reasonable probability that Dr. Hartman's testimony influenced the jury's determination of comparative fault, especially considering the instruction that assumption of the risk—which requires actual knowledge of the dangerous condition—could be compared with the defendant's negligence. *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 78–79, 508 S.E.2d 565, 569 (1998) ("[T]here are four requirements to establishing the defense of assumption of risk: (1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger."). For this reason, we hold the Gurwoods were prejudiced by the admission of this testimony.

In sum, we hold the trial court abused its discretion in admitting Dr. Hartman's expert testimony because the evidence in the record is insufficient to show that the substance of her testimony was reliable, and we hold this error prejudiced the Gurwoods. For this reason, we reverse as to this issue and remand to the trial court for a new trial.

## II.    New Trial Motions

The Gurwoods argue the trial court abused its discretion by denying their new trial motions because "[t]he jury's verdict of damages only for past medical bills incurred is clearly inconsistent with the evidence presented and reflects the jury's confusion." We disagree.

### A. New Trial Absolute

"[T]he decision to grant a new trial is left to the sound discretion of the trial court and generally will not be disturbed on appeal." *Wright v. Craft*, 372 S.C. 1, 36, 640 S.E.2d 486, 505 (Ct. App. 2006). "South Carolina's thirteenth juror doctrine allows the [trial] court . . . to grant a new trial absolute when [it] finds the evidence does not justify the verdict." *Trivelas v. S.C. Dep't of Transp.*, 357 S.C. 545, 551, 593 S.E.2d 504, 507 (Ct. App. 2004). "Similarly, the [court] may grant a new trial

if the verdict is inconsistent and reflects the jury's confusion." *Vinson v. Hartley*, 324 S.C. 389, 404, 477 S.E.2d 715, 722 (Ct. App. 1996). "The thirteenth juror doctrine is not the proper vehicle for ordering a new trial on a singular issue such as damages." *Howard v. Roberson*, 376 S.C. 143, 156, 654 S.E.2d 877, 884 (Ct. App. 2007). Additionally, "[t]he trial [court] must grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption[,] or some other improper motives." *Vinson*, 324 S.C. at 404, 477 S.E.2d at 723.

South Carolina law does not require a jury that awards damages for medical costs to also award damages for future medical expenses or pain and suffering. *See Nestler v. Fields*, 426 S.C. 34, 39–42, 824 S.E.2d 461, 464–65 (Ct. App. 2019) (upholding a trial court's denial of a new trial absolute, new trial based on the thirteenth juror doctrine, and new trial *nisi* when a jury only awarded the plaintiff the amount of his medical bills despite hearing evidence of "permanent impairment, pain and suffering, and other non-economic damages"). Damages evidence, like all evidence, is subject to the jury's assessment of credibility. *See Black v. Hodge*, 306 S.C. 196, 198, 410 S.E.2d 595, 596 (Ct. App. 1991) ("The fact that testimony is not contradicted directly does not render it undisputed. There remains the question of the inherent probability of the testimony and the credibility of the witness or the interests of the witness in the result of the litigation.").

We hold the jury's verdict is consistent with the evidence presented and the amount of the verdict is not so grossly inadequate as to indicate the jury was motivated by passion, caprice, prejudice, or another improper motive. The parties presented contradictory testimony regarding the legitimacy and severity of Karrie's chronic pain diagnosis and whether it resulted from the fall, and there were inconsistences among the Gurwoods' accounts of Karrie's chronic pain and how her symptoms affected her life. As in *Nestler*, the jury could have found "serious credibility gaps" in the Gurwoods' damages evidence. 426 S.C. at 41, 824 S.E.2d at 465. Thus, the trial court did not abuse its discretion in denying the Gurwoods' motion for a new trial absolute. *Wright*, 372 S.C. at 36, 640 S.E.2d at 505. ("To warrant a new trial, the verdict must be so grossly [inadequate] as to clearly indicate the influence of an improper motive on the jury."). For the same reasons, the trial court did not err in denying the Gurwoods' motion for a new trial under the thirteenth juror doctrine. *Trivelas*, 357 S.C. at 551, 593 S.E.2d at 507 ("South Carolina's thirteenth juror doctrine allows the [trial] court . . . to grant a new trial absolute when [it] finds the evidence does not justify the verdict"); *see also Howard*, 376 S.C. at

156, 654 S.E.2d at 884 ("The thirteenth juror doctrine is not the proper vehicle for ordering a new trial on a singular issue such as damages.").

### B. New Trial Nisi Additur

"A trial [court] may grant a new trial *nisi additur* whenever [it] finds the amount of the verdict to be merely inadequate." *Green v. Fritz*, 356 S.C. 566, 570, 590 S.E.2d 39, 41 (Ct. App. 2003). "The [trial court's] decision will not disturbed on appeal unless it clearly appears the exercise of discretion was controlled by a manifest error of law." *Welch v. Epstein*, 342 S.C. 279, 303, 536 S.E.2d 408, 420 (Ct. App. 2000). A trial court may grant a new trial *nisi additur* when a jury's verdict fails to account for the plaintiff's pain and suffering. *Waring v. Johnson*, 341 S.C. 248, 260, 533 S.E.2d 906, 912–13 (Ct. App. 2000); *see also Howard*, 376 S.C. at 157, 654 S.E.2d at 884 ("[T]he trial court should have ruled on [the plaintiff's] motion for a new trial *nisi additur*, and in its discretion, increased damages for pain and suffering."). However, it may also decline to do so. *Nestler*, 426 S.C. at 41–42, 824 S.E.2d at 465 ("Although some cases have held a trial court abuses its discretion when it refuses to grant a new trial *nisi additur* when the jury's verdict is less than a party's medical bills . . . or fails to account for pain and suffering, . . . the trial court here found no compelling reason to impose its will on the parties and invade the jury's domain. We must accord the trial court's decision 'great deference[]' and respect its superior position to gauge credibility and the field of evidence." (internal citations omitted)).

Here, the trial court did not abuse its discretion in denying the Gurwoods' motion for a new trial *nisi additur*. Our review of the record affirms the trial court's finding that the damage award was adequate. In any event, the trial court had a "better-informed view" of the damages evidence presented at trial. *Waring*, 341 S.C. at 257, 533 S.E.2d at 911. ("The trial [court that] heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this [c]ourt."). Because we must "respect [the trial court's] superior position to gauge credibility and the field of evidence," we hold the trial court did not abuse its discretion in deciding not to order a new trial *nisi additur*. *Nestler*, 426 S.C. at 41, 824 S.E.2d at 465; *see also Welch*, 342 S.C. at 303, 536 S.E.2d at 420 ("The [court]'s decision will not be disturbed on appeal unless it clearly appears the exercise of discretion was controlled by a manifest error of law.").

## III. Dr. Hejzlar's Expert Testimony

The Gurwoods contend a new trial is warranted because the trial court abused its discretion in excluding Dr. Zdenek Hejzlar's, an expert in human factors psychology, testimony as to how the dangerous condition in this case could have been eliminated or guarded against. We hold the trial court erred in excluding this testimony but the Gurwoods were not prejudiced by its exclusion.

"The admission of evidence is a matter left to the discretion of the trial [court] and, absent clear abuse, will not be disturbed on appeal." *Osterneck v. Osterneck*, 374 S.C. 573, 579, 649 S.E.2d 127, 131 (Ct. App. 2007) (quoting *Carlyle v. Tuomey Hosp.*, 305 S.C. 187, 193, 407 S.E.2d 630, 633 (1991)). "In order for this court to reverse a case based on the erroneous admission or erroneous exclusion of evidence[,] the plaintiff must show error and prejudice." *Id.* (quoting *Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970)).

"Whether a defendant has acted negligently is a mixed question of law and fact." *Nelson v. Piggly Wiggly Cent., Inc.*, 390 S.C. 382, 391, 701 S.E.2d 776, 780 (Ct. App. 2010). Once the court determines as a matter of law whether a duty exists, the jury then determines whether the defendant breached that duty by failing to adhere to a particular standard of care. *See id.* at 391, 701 S.E.2d at 781. When making this determination, a jury may consider "relevant standards of care from various sources . . . ." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 140, 638 S.E.2d 650, 659 (2006); *id.* ("The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines.").

"An expert's opinion testimony may be based upon a hypothetical question." *Gazes v. Dillard's Dep't Store, Inc.*, 341 S.C. 507, 514, 534 S.E.2d 306, 310 (Ct. App. 2000). "Even though the hypothetical question must be based on facts supported by the evidence, counsel may pose the hypothetical 'on any theory which can reasonably be deduced from the evidence and select as a predicate for it such facts as the evidence proves or reasonably tends to prove.'" *Id.* at 514–15, 534 S.E.2d at 310 (quoting *Gathers v. South Carolina Elec. and Gas Co.,* 311 S.C. 81, 82–83, 427 S.E.2d 687, 688 (Ct. App. 1993)).

Initially, we hold the court erred in excluding Dr. Hejzlar's testimony regarding potential methods GCA could have employed to eliminate or guard against the hazard created by the waxed floor. This testimony would have provided the jury with a source it could consider when determining whether GCA breached its standard of care. *See Madison*, 371 S.C. at 140, 638 S.E.2d at 659 ("The factfinder may consider relevant standards of care from various sources in determining whether

a defendant breached a duty owed to an injured person in a negligence case. The standard of care in a given case may be established and defined by . . . industry standards, or a defendant's own policies and guidelines."). Additionally, the Gurwoods' proposed hypothetical questions to Dr. Hejzlar—including whether fans or barricades could have eliminated or guarded against the hazard—were predicated on their theory that GCA breached the standard of care by failing to adhere to the safety hierarchy, which requires using available techniques to eliminate or guard against a hazard. *See Gazes*, 341 S.C. at 514–15, 534 S.E.2d at 310 ("[C]ounsel may pose the hypothetical 'on any theory which can reasonably be deduced from the evidence and select as a predicate for it such facts as the evidence proves or reasonably tends to prove.'" (quoting *Gathers*, 311 S.C. at 82–83, 427 S.E.2d at 688)). Further, the proposed testimony—that the danger could have been eliminated more quickly by a fan or guarded against by a barricade—was not speculative because it was based on Dr. Hejzlar's undisputed expertise and experience. *See Warner*, 430 S.C. at 88, 842 S.E.2d at 367 (discussing that Rule 702 permits experience-based expert testimony). For these reasons, the trial court erred in excluding this testimony.

However, we hold this error did not prejudice the Gurwoods. Dr. Hejzlar was still permitted to describe the safety hierarchy in general and to provide his opinion that it comprised the standard of care applicable to, and breached by, GCA. Ultimately, the jury found GCA negligent. Thus, the Gurwoods were not prejudiced by this error, and it does not warrant a new trial.

## IV. Collateral Source Testimony

The Gurwoods argue they should receive a new trial because the trial court abused its discretion in allowing GCA to impeach Karrie with evidence of her medical insurance, which was highly prejudicial, not very probative, and violative of the collateral source doctrine. We disagree.

"Under the 'collateral source rule', a [tortfeasor] has no right to any mitigation of damages because of payments or compensation received by the injured person from an independent source." *Young v. Warr,* 252 S.C. 179, 197, 165 S.E.2d 797, 806 (1969). "This rule has been liberally applied in South Carolina to preclude the reduction of damages." *Gibson v. Wright*, 403 S.C. 32, 44, 742 S.E.2d 49, 55 (Ct. App. 2013) (quoting *In re W.B. Easton Constr. Co.*, 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995)). However, "[w]here such evidence has relevance to the witness's credibility, it has been held admissible." *Bonaparte v. Floyd*, 291 S.C. 427, 443, 354 S.E.2d 40, 50 (Ct. App. 1987) (affirming the admission of evidence of the plaintiff's

medical insurance to impeach the plaintiff's testimony that she did not go to follow up visits with her surgeon and psychiatrist because she could not afford the visits); *see also Rhodes v. Spartanburg County*, 262 S.C. 644, 650, 207 S.E.2d 85, 88 (1974) (holding that evidence that a plaintiff received payments from her father's business during her period of disability was "clearly admissible as bearing upon the credibility of [the] plaintiff's testimony that she performed no services for which she received pay for a period of twenty-six weeks following her injury"); *Campbell v. Bi-Lo, Inc.*, 301 S.C. 448, 454, 392 S.E.2d 477, 481 (Ct. App. 1990) (concluding that testimony about the plaintiff's worker's compensation settlement and the payment of her medical bills was properly elicited for the purpose of impeachment after she stated she lost her house and car after losing her job).

We hold the trial court did not err in admitting testimony about Karrie's Medicare coverage because Karrie opened the door to this evidence by testifying she had not received recommended medical treatment because she could not afford it. South Carolina cases have made clear that there is an exception to the collateral source rule for the purpose of impeachment. *Bonaparte*, 291 S.C. at 443, 354 S.E.2d at 50 ("Where such evidence has relevance to the witness's credibility, it has been held admissible."). Therefore, it was proper for the trial court to allow GCA to impeach Karrie regarding her ability to pay for the recommended treatment by asking her if she had insurance that would help her pay for the treatment.[6] Accordingly, we hold the trial court did not err in admitting testimony of Karrie's medical insurance and affirm as to this issue.

## V.     Assumption of the Risk

The Gurwoods argue the trial court abused its discretion in denying their directed verdict motion and charging the jury on assumption of risk because no evidence was presented at trial that Karrie knew of the waxed floor when she fell or that she "appreciated the nature and extent" of the dangers of the waxed floor. We disagree.

"When ruling on a directed verdict . . . motion, the trial court must view the evidence and the inferences that reasonably can be drawn from it in the light most

---

[6] The Gurwoods argue their case differs from *Bonaparte* because in that case, the plaintiff could receive her medical treatment locally. However, this fact does not render the *Bonaparte* holding sufficiently distinguishable, particularly because Karrie admitted she could have received the recommended treatment in North Carolina but preferred to receive the treatment in Chicago.

favorable to the nonmoving party." *Hamilton v. Reg'l Med. Ctr.*, 440 S.C. 605, 626, 891 S.E.2d 682, 693 (Ct. App. 2023), *cert. denied* (May 1, 2024). "The appellate court will reverse the trial court's ruling . . . only when no evidence supports the ruling or when an error of law controls the ruling." *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434–35, 629 S.E.2d 642, 648 (2006).

"An appellate court will not reverse the trial [court]'s decision regarding a jury charge absent an abuse of discretion." *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (quoting *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010)). "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *Id.* (quoting *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011)). "The trial court is required to charge only the current and correct law of South Carolina." *Pope v. Heritage Communities, Inc.*, 395 S.C. 404, 415, 717 S.E.2d 765, 771 (Ct. App. 2011).

"In order for the doctrine of assumption of the risk to apply in a particular case, the injured party must have freely and voluntarily exposed himself to a known danger which he understood and appreciated." *Cole v. Raut*, 378 S.C. 398, 404–05, 663 S.E.2d 30, 33 (2008). While our supreme court "effectively abolished the affirmative defense of assumption of the risk in *Davenport v. Cotton Hope Plantation*,"[7] it held "a plaintiff[']s conduct in assuming a risk can be compared with the defendant's negligence." *Davenport*, 333 S.C. at 86, 508 S.E.2d at 573.

We hold the trial court did not abuse its discretion in denying the Gurwoods' directed verdict motion as to assumption of the risk because the evidence supports an inference that Karrie understood and voluntarily exposed herself to the dangers of the waxed floor when she entered the school. *See Steinke v. S.C. Dep't of Lab., Licensing & Regul.*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999) ("The trial court must deny [a directed verdict motion] when the evidence yields more than one inference or its inference is in doubt. This [c]ourt will reverse the trial court only when there is no evidence to support the ruling below."). The Gurwoods admitted at trial, and we agree, that an inference arises from the evidence presented that Karrie knew the floor was waxed and voluntarily exposed herself to the known danger. Moreover, Karrie testified that had she known the floors were being waxed, she would not have come into the school, indicating she knew and understood the dangers of a waxed floor.

---

[7] *Cole*, 378 S.C. at 405 n.2, 663 S.E.2d at 33 n.2.

Likewise, the trial court did not abuse its discretion in charging the jury on assumption of the risk.  Based on the evidence presented, the issue was appropriately before the jury.  Additionally, the trial court charged the jury as to the correct law on assumption of the risk, noting it was not a "separate or complete defense from comparative negligence . . . [but] a plaintiff's conduct in assuming a risk can be compared with the defendant's negligence." *See Marin*, 415 S.C. at 482, 783 S.E.2d at 812 ("In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." (quoting *Brandt*, 393 S.C. at 549, 713 S.E.2d at 603)); *Pope*, 395 S.C. at 415, 717 S.E.2d at 771 ("The trial court is required to charge only the current and correct law of South Carolina."); *see also Cole*, 378 S.C. at 405 n.2, 663 S.E.2d at 33 n.2; *Davenport*, 333 S.C. at 86–87, 508 S.E.2d at 573.  Accordingly, we affirm as to this issue.

**CONCLUSION**

Because we hold the admission of Dr. Hartman's expert testimony was a prejudicial error, the decision of the trial court is

**REVERSED AND REMANDED.**[8]

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

[8] We decide this case without oral argument pursuant to Rule 215, SCACR.